**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| ALFRED D. HARVEY JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-cv-551 |
| | ) | |
| CITIMORTGAGE, INC., SANJIV DAS, | ) | |
| and PAUL INCE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

No longer making the payments on his $1 million loan, Plaintiff Alfred D. Harvey, Jr.

filed this Complaint, listing a hodgepodge of federal statutes and state causes of action which he

alleges void his loan or otherwise excuse him from making further payments.  Noticeably absent

from the Complaint are any allegations that tell Defendants what Plaintiff believes they did

wrong.  Instead, the Complaint appears to be an iteration of a long line of "mortgage

elimination" cases, in which plaintiffs—typically proceeding *pro se*—allege that commonly

accepted mortgage lending practices are inherently illegal.  These plaintiffs usually argue, as

Plaintiff does here, that this alleged illegality means they should be entitled to remain in their

homes debt free.  These types of legal arguments repeatedly have been dismissed by the federal

courts as frivolous, even when brought by *pro se* litigants.  Plaintiff's Complaint should prove no

exception.[1]

---

[1] It appears that Plaintiff may have modeled his Complaint from one of the many "mortgage elimination" websites, which mislead consumers into believing there are legal loopholes that will enable them to keep their homes without paying their mortgages.  For instance, many of Plaintiff's claims and supporting legal citations are similar—or in some cases, identical—to arguments listed in "lecture notes" found on www.1215.org/mortgage/index.html.  The website indicates that these notes are provided for those "looking at the bank problem regarding mortgages and foreclosures," and are "offered without comment or blessing."

## I.      BACKGROUND

For purposes of a motion to dismiss, a district court must "accept the allegations

contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving

party."  *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005).[2]  When ruling on a motion to

dismiss, the court "may consider documents attached to the complaint and matters of public and

administrative record referenced in the complaint."  *Great Plains Trust Co. v. Union Pac. R.R.*,

492 F.3d 986, 990 (8th Cir. 2007).  It may also consider "some public records, materials that do

not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'"

*Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (quoting *Porous*

*Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)); *see also Silver v. H&R Block,*

*Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (holding that plaintiff could not avoid a motion to dismiss

by failing to attach full statements on which his claim for relief relied).  Given these procedural

requirements, the factual allegations in the Complaint are as follows:

Plaintiff contends that he and CitiMortgage purportedly "participated in contract and

commercial activity in respect to a Negotiable Instrument Note."  (Compl. at 5.)[3]  The

Complaint's exhibits clarify that Plaintiff entered into a promissory note with CitiMortgage for

which he currently owes approximately $981,000.  (Exhibit 1 to Complaint ("Exh. 1"), at 1.)

CitiMortgage's records confirm that on September 28, 2007, Plaintiff entered into a promissory

---

In addition, an almost identical case was filed in this Court by a different *pro se* plaintiff 12 days after Plaintiff's case was opened.  *See Barnes v. Citigroup, et al.*, No. 4:10-cv-620 (E.D. Mo. filed Apr. 13, 2010).  The similarities between the two cases are too great to be coincidental, but it is unclear whether the two plaintiffs know one another or whether there is a third party providing debt elimination advice to both plaintiffs.

[2]  Thus, although CitiMortgage expressly denies Plaintiff's allegations, it has treated them as true for purposes of this motion.

[3]  Because the pages of the Complaint and its Exhibits are not numbered, all references to page numbers herein are to the page numbers of the documents as electronically filed with this Court's CM/ECF system.

note for a $1 million refinance loan with CitiMortgage, d/b/a ABN AMRO Mortgage Group, Inc.[4]  (Note, attached hereto as Exhibit A.)  The loan was secured by a deed of trust on Plaintiff's residence.  (Deed of Trust, attached hereto as Exhibit B.)[5]  The Complaint's exhibits further allege that foreclosure proceedings were purportedly instituted on Plaintiff's property, but CitiMortgage's internal documents do not support this allegation.  (Exh. 1 at 1.)

Although Plaintiff's remaining allegations are difficult to understand, liberally read and succinctly stated, Plaintiff seems to allege the following:

- ▪ Plaintiff purportedly did not actually take out a loan, but made an even exchange with CitiMortgage by providing CitiMortgage with a bond;

- ▪ Defendants purportedly did not make Plaintiff a valid loan, but instead endorsed Plaintiff's promissory note, deposited it, and lent Plaintiff's own money back to him (the so-called "vapor money" theory);

- ▪ Defendants purportedly engaged in securities violations by securitizing Plaintiff's loan and pooling it with other mortgages, thereby creating an asset-backed security, and by failing to disclose this arrangement;

- ▪ Defendants purportedly violated various provisions of the National Bank Act, the Fair Debt Collection Practices Act, and the Truth in Lending Act, and committed fraud.

Based on these allegations, Plaintiff seeks, *inter alia*, to have his mortgage discharged and to be released from his lien, to have all payments made on the loan returned, and to have the

---

[4] On September 1, 2007, AMRO merged into CitiMortgage, with CitiMortgage as the surviving entity.  The ABN AMRO Mortgage Group, Inc. name was used for all loans that were in process as of September 1, 2007, including Plaintiff's.

[5] These documents are appropriately considered on a motion to dismiss.  The note is repeatedly referenced in the Complaint and is thus "necessarily embraced by the pleadings."  *Noble Sys. Corp.*, 543 F.3d at 982.  The deed of trust is also properly considered on a motion to dismiss because it is publicly available.  *Id.*

Individual Defendants personally fined.  In total, Plaintiff seeks damages totaling $10 million (*Id.* at 4.)  He cites no fewer than ten separate causes of action and/or federal and state statutes, including (1) the "vapor money" theory; (2) 42 U.S.C. § 1983, (3) the National Bank Act, (4) the Fair Debt Collection Practices Act, (5) the Truth in Lending Act, (6) securities laws, (7) Uniform Commercial Code § 3-305, (8) fraud in the inducement, (9) "fraud in fact," and (10) material misrepresentation.  Plaintiff does not state a claim under any of these theories or statutes.

## II.      THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED.

As an initial matter, Plaintiff alleges no facts against defendants Sanjiv Das or Paul Ince (the "Individual Defendants") in their individual capacities.  Instead, every factual allegation relates to the Individual Defendants in their capacities as agents or officers of CitiMortgage. These allegations are insufficient to state a claim against the Individual Defendants.

Under Missouri law, "holding a corporate office does not expose an officer to individual liability for corporate misdeeds."  *State ex rel. Doe Run Resources Corp. v. Neill*, 128 S.W.3d 502, 505 (Mo. banc 2004).  Instead, "a corporate officer may be held individually liable for tortious corporate conduct [only] if he or she had 'actual or constructive knowledge of, and participated in, an actionable wrong.'"  *Id.* (quoting *Lynch v. Blanke Baer & Bowey Krimko, Inc.*, 901 S.W.2d 147, 153 (Mo. App. 1995), abrogated on other grounds by *Fleshner v. Pepose Vision Institute, P.C.*, --- S.W.3d ---, 2010 WL 444885 (Mo. banc Feb. 9, 2010); and *Grothe v. Helterbrand*, 946 S.W.2d 301, 3014 (Mo. App. 1997)).  For instance, in *Doe Run*, the Supreme Court of Missouri found that the complaint stated a cause of action against the company's CFO where it alleged that the CFO "knew of and participated in Doe Run's tortious conduct by helping to set and then approve budgets that delayed or rejected the implementation of adequate measures for pollution control as well as remediation of properties within the defined area."  *Id.*

4

By contrast, where a complaint alleges that a corporate officer participates in the corporation's torts in his capacity as agent for the corporation, it fails to state a claim against the officer in his individual capacity. *Lynch*, 901 S.W.2d at 154.

Here, no allegations relate to the Individual Defendants in their individual capacities. Specifically, Defendant Paul Ince is not named once in the Complaint's allegations. As there are no allegations whatsoever regarding his purported individual participation in, and knowledge of, CitiMortgage's alleged torts, he must be dismissed from the case. And with respect to Defendant Sanjiv Das, Plaintiff alleges that Mr. Das (1) purportedly acted as CitiMortgage's agent when CitiMortgage violated various federal laws, (Exh. 1 at 9); and (2) purportedly "participated in [CitiMortgage's] fraud through his endorsement on the assignment from CITIMORTGAGE," (*id.* at 10). The first allegation does not state a claim against Mr. Das in his individual capacity, but expressly alleges that Mr. Das was acting as CitiMortgage's agent; it is therefore insufficient. *See Lynch*, 901 S.W.2d at 154. The second allegation only alleges that Mr. Das signed a document; it does not allege Mr. Das was aware of CitiMortgage's purported fraud. This allegation does not rise to the level of individual participation liability under Missouri law.

Finally, Plaintiff contends that the Individual Defendants violated their oath under the National Bank Act to uphold the banking laws of the United States pursuant to 12 U.S.C. § 73. (Compl. at 9.) To the extent this provision applies to the CEO and CFO of CitiMortgage, an operating subsidiary of a national bank, it does not give rise to a private cause of action. *See Thompson v. Kerr*, 555 F. Supp. 1090, 1098 (S.D. Ohio 1982).

## III.   THE COMPLAINT FAILS TO MEET PLEADING STANDARDS OR TO STATE ANY CLAIM ON WHICH RELIEF CAN BE GRANTED.

Under Rule 8, Fed. R. Civ. P., a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and all averments must be "simple, concise,

and direct." Fed. R. Civ. P. 8(a)(2), (d)(1).  Although a plaintiff need not make "'detailed factual allegations,'" he must allege "more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Accordingly "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  This requirement "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a cause of action sufficient to survive a motion to dismiss.  *Id.*

Finally, even though complaints drafted by *pro se* litigants "are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), 'a district court should not assume the role of advocate for the pro se litigant,' nor may a district court 'rewrite a [complaint] to include claims that were never presented.'" *Allen v. ASRC Communication*, No. 4:08CV1575, 2010 WL 1404179, at *2 (E.D. Mo. Apr. 8, 2010) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir.1999) (quotations omitted), cited with approval in *Palmer v. Clarke*, 408 F.3d 423, 444 n.15 (8th Cir. 2005)).

Here, even taking Plaintiff's *pro se* status into account, the Complaint falls far short of meeting Rule 8's plausibility requirement.  For instance, Plaintiff alleges that he gave CitiMortgage a "bond" as a "lawful exchange" and that he "had no idea this transaction was being processed as a loan."  (Exh. 1 at 10.)  But Plaintiff does not explain what kind of "bond" this was or why he would convey a bond to a company in the business of making mortgage

loans.  If, as Plaintiff seems to suggest, he had a bond that he could use to refinance his home, it makes no sense whatsoever that he would give it to CitiMortgage in exchange for a note secured by his residence.   In any event, the Note and Deed of Trust entered into between Plaintiff and CitiMortgage belie his contention.  The Note states that "In return for a loan that I have received, I promise to pay U.S. $1,000,000.00 . . . to the order of the Lender."  (Exhibit A.)  The Deed of Trust names Plaintiff as the "borrower" and ABN AMRO Mortgage Group, Inc., a CitiMortgage entity, as the "lender."  (Exhibit B.)  It also states that Plaintiff signed a promissory note under which he owed the lender $1 million and the Deed of Trust is a security interest securing the repayment of the loan to the lender.  (*Id.*)  These documents, signed by Plaintiff, could not be plainer:  Plaintiff entered into a $1 million loan with CitiMortgage.  Plaintiff acknowledged this by paying his mortgage each month since September 2007.  His specious attempts to categorize this as anything other than a traditional residential mortgage transaction are in bad faith and should be rejected.

The rest of Plaintiff's vague, conclusory, and rambling allegations also violate Rule 8 because they fail to put Defendants on notice of the claims against them or the facts supporting those claims.  This is precisely what *Twombly* and *Iqbal* prohibit.

Although this Complaint should be dismissed for failing to comply with Rule 8, it also fails to state any cognizable cause of action.  Sprinkled throughout the Complaint are references to various federal statutes and state common law causes of action.  As set forth below, though, the Complaint fails to state a claim under any of these theories.

### A.     Vapor Money Theory

Like many plaintiffs before him, Plaintiff appears to argue that his loan is invalid because it was not backed by actual money.  Although the particulars of the theory vary from case to

case, in a typical "vapor money" claim, "[plaintiff alleges that the promissory note he executed is the equivalent of 'money' that he gave to the bank.  He contends that [the lender] took his 'money,' *i.e.*, the promissory note, deposited it into its own account without his permission, listed it as an 'asset' on its ledger entries, and then essentially lent his own money back to him." *Demmler v. Bank One NA*, No. 2:05-CV-322, 2006 WL 640499, at *3 (S.D. Ohio Mar. 9, 2006).

Here, Plaintiff alleges that he endorsed a note to CitiMortgage, which CitiMortgage "fraudulently altered and endorsed," and deposited in its account.  (Exh. 1 at 5.)  Plaintiff further alleges that CitiMortgage unlawfully "converted the note into a draft by endorsement . . . thereby altering [Plaintiff's] capacity as the debtor to a surety on the contract which was not originally disclosed."  (Compl. at 6.)  Thus, Plaintiff alleges that he is "actually the creditor and surety in fact," and "Bank of America pooling and servicing agreements will identify [Plaintiff] as the true lender and will also show that there are zero loans outstanding in the quarter in which the alleged loan was contracted."  (*Id.* at 6-7.)[6]

This "patently ludicrous argument" has been rejected by countless courts.  *Demmler*, 2006 WL 640499, at *4; *see also, e.g.*, *Buckley v. Bayrock Mortgage Corp.*, No. 1:09-CV-1387, 2010 WL 476673, at *8-*9 (N.D. Ga. Feb. 10, 2010); *Kuder v. Washington Mut. Bank*, No. CIV S-08-3087, 2009 WL 2868730, at *3 (E.D. Cal. Sept. 2, 2009); *Gentsch v. Ownit Mortgage Solutions Inc.*, No. CV F 09-0649, 2009 WL 1390843, at *5 (E.D. Cal. May 14, 2009); *Francis Kenny Family Trust v. World Sav. Bank FSB*, No. C 04-03724, 2005 WL 106792, at *5 (N.D. Cal. Jan. 19, 2005); *Thiel v. First Fed. Sav. & Loan Ass'n of Marion*, 646 F. Supp. 592, 596 (N.D. Ind. 1986).  As these courts have acknowledged, "[r]easoning on the most fundamental

---

[6] It is unclear what relationship, if any, Bank of America has to these parties or the mortgage transaction at issue.

level, a level which requires more common sense than legal acumen, [this] theory is absurd."  *Id.*

Accordingly, this Court should reject Plaintiff's "vapor money" theory.[7]

## B.      42 U.S.C. § 1983

Plaintiff's Complaint is purportedly predicated on 42 U.S.C. § 1983, but Plaintiff fails to

set forth the elements for a § 1983 action.  "The 'ultimate issue' to determine whether a person is

subject to a section 1983 action is whether 'the alleged infringement of federal rights [is] fairly

attributable to the state?'"  *Gentsch*, 2009 WL 1309843, at *8 (quoting *Rendell-Baker v. Kohn*,

457 U.S. 830, 838 (1982) (further quotation omitted)).  Private parties are presumed not to be

acting "under color of law."  *Id.* at *9.  Here, there is no allegation sufficient to establish that

Defendants were state actors or were acting under color of state law as "willful participant[s] in

joint action with the State or its agents."  *Dubose v. Kelly*, 187 F.3d 999, 1003 (8th Cir. 1999).

Thus, Defendants are not state actors and are not liable under § 1983.  *See Gentsch*, 2009 WL

1309843, at *9 (holding that loan servicer is not a state actor and that a foreclosure does not

violate § 1983).

Nor has Plaintiff alleged any deprivation of "rights, privileges or immunities secured by

the Constitution or laws of the United States."  *Dubose*, 187 F.3d at 1002 (quoting *Parratt v.

Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S.

327 (1986)).  Instead, he seeks to void a contract based on fraud and other statutory violations.

Plaintiff's allegation that "there may be a breach by the President and Vice President of the

Institutions in respect to a contract they entered into with me," (Compl. at 8), does not implicate

any federally protected rights.  And Plaintiff's claims that Defendants violated various federal

---

[7] In fact, despite the liberality federal courts generally afford *pro se* plaintiffs, courts have held that the filing of
these frivolous claims can be sanctionable.  *See Thiel*, 646 F. Supp. at 594 ("*Pro se* motions and complaints . . . are
held to less stringent pleading requirements . . . .  [This court] has come to the conclusion, however, that the
complaint is totally without legal foundation, and, indeed, warrants sanctions pursuant to Rule 11.").

laws are also insufficient.  *See Blessing v. Freestone*, 520 U.S. 329, 329-330 (1997) (citation

omitted) ("A plaintiff seeking § 1983 redress must assert the violation of a federal right, not

merely of federal law.").  Thus, since Plaintiff has failed to plead that Defendants acted under

color of state law or that Defendants acted to deprive Plaintiff of any federally protected right,

the § 1983 claim should be dismissed.

       **C.**     **National Bank Act**

      Plaintiff alleges that Defendants violated the National Bank Act, but none of the cited

provisions have any applicability here.  Provisions of the National Bank Act of 1864 regarding

circulating notes have long been repealed (Exh. 1 at 10),[8] but in any event, a promissory note is

not the same thing as a "circulating note," which is a U.S. currency banknote issued by banks

and backed by U.S. treasury bonds.  *See* Kurt Schuler, *Note Issue by Banks: A Step Toward Free*

*Banking in the United States?*, 20 Cato Journal 453, 456 (2001); Federal Reserve Board

Frequently Asked Questions, Currency: Notes and Coins,

http://www.federalreserve.gov/generalinfo/faq/faqcur.htm.

      Next, Plaintiff's loan was secured by his residence, not by CitiMortgage's stock, as

prohibited by 12 U.S.C. § 83; thus, this statute is inapplicable to Plaintiff's transaction.  (*See*

Exh. 1 at 11.)  Plaintiff's reliance on 12 U.S.C. § 29, which prohibits a national bank from

"hold[ing] the possession of any real estate under mortgage, or the title and possession of any

real estate purchased to secure any debts due to it, for a longer period than five years," is

---

[8] Of course, it is true, as Plaintiff suggests, that the Statutes at Large prevail over the United States Code to the
extent the two are inconsistent.  *See Darby v. Cisneros*, 509 U.S. 137, 138 n. 1 (1993) (quoting *Stephan v. United
States*, 319 U.S. 423, 426 (1943)).  But Plaintiff cites to no section of the Statutes at Large *currently in force* that
conflict with Title 12 of the United States Code.  *See United States v. Wodtke*, 627 F. Supp. 1034, 1041 (N.D. Iowa
1985) (distinction between Statutes at large and United States Code irrelevant where party does not point to any
inconsistencies).  All references herein are to the current version of the United States Code.

similarly misplaced, as CitiMortgage does not "possess" Plaintiff's property.  (*See* Exh. 1 at 11.)

And, of course, national banks are expressly permitted to "make, arrange, purchase or sell loans

or extensions of credit secured by liens on interests in real estate," 12 U.S.C. § 371, and the 30-

year mortgage is common in the lending industry.  All of Plaintiff's National Bank Act

allegations should therefore be dismissed.

> **D.      Fair Debt Collection Practices Act**

Plaintiff makes passing reference to the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. 1692, *et seq.* and alleges that the "Bank Directors" failed "to answer challenges to the

debt though they are required to by the Fair Debt Collections Practice Act." (Compl. at 9.)

But the FDCPA does not apply here because CitiMortgage is not a "debt collector," defined by

the statute as "any person who . . . regularly collects or attempts to collect, directly or indirectly,

debts owed or due or asserted to be owed or *due another*." § 1692a(6) (emphasis added).  Since

CitiMortgage is the original creditor (by virtue of its acquisition of AMRO), it is not a "debt

collector" within the meaning of the FDCPA.  *See* § 1692a(4) (distinguishing creditors from debt

collectors as defined in §1692a(6)); *see also Gentsch*, 2009 WL 1309843, at *7 (dismissing

FDCPA claim where plaintiff failed to plead that defendant was a "debt collector" under the

statute).  Furthermore, even if the FDCPA did apply to CitiMortgage, Plaintiff fails to allege that

his so-called "challenges" were in writing and made within the statutory time frame, as required

by the FDCPA.  *See* § 1692g(a)(4) ("[I]f the consumer notifies the debt collector in writing

within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector

will obtain verification of the debt . . . a copy of which will be sent to the consumer.").

Finally, to the extent Plaintiff relies on his contention that CitiMortgage is "attempting to

collect upon a debt by unlawful means through a security deed that has been rescinded under the

Truth in Lending Act," (Compl. at 6), he cites no facts to support this allegation.[9]  Thus, Plaintiff

has failed to allege any cause of action under the FDCPA.

      **E.**      **Securities Violations**

      Although the Complaint does not mention any specific securities law or regulation, it

alleges that Defendants' conduct amounts to "a direct SEC violation on disclosure, fraud against

investors and filing of fraudulent reports to the SEC."  (Compl. at 7.)  To the extent this Court

treats Plaintiffs allegations as a claim for securities fraud, it should dismiss the claim because

Plaintiff lacks standing, as he does not allege that he bought or sold securities.  *See Blue Chip*

*Stamps v. Manor Drug Stores*, 421 U.S. 723, 735-36 (1975) (noting that remedies for securities

fraud "are by their terms expressly limited to purchasers or sellers of securities").  And even if he

did have standing, Plaintiff fails to meet the heightened pleading requirements for securities

fraud claims under section 10(b).  *See In re H & R Block Sec. Litig.,* 527 F. Supp. 2d 922, 926

(W.D. Mo. 2007) ("[T]he following elements must be established: (1) a material representation

or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5)

economic loss; and (6) loss causation.").

      Plaintiff also alleges that CitiMortgage is a "pooling and servicing compan[y] as well as

[a] loan seller[], that CitiMortgage converted his note "into an investment security after

securitization"; that "CitiMortgage is currently trading my unregistered securities in my name

without authority and without consent and are benefiting at my expense"; and that "Citimortgage

is selling the payments they have induced the Plaintiff by fraud to pay as a debtor as the cash

flow payment to these investors who have purchased these future payments as investments."

---

[9] Plaintiff cannot state an independent Truth in Lending Act claim because the one-year statute of limitations period, which began to run when Plaintiff entered his loan in September 2007, has long since expired.  *See Gentsch*, 2009 WL 1390843, at *8 (citing 15 U.S.C. § 1640(e)).

(Compl. at 6-7.)  Although these allegations are unclear, it appears that Plaintiff claims his mortgage was sold and pooled with other mortgages to an entity that then issued securities based on the payments made by Plaintiff and other borrowers, *i.e.*, securitization.  *See* Securities & Exchange Comm'n, Mortgage Backed Securities, http://www.sec.gov/answers/mortgagesecurities.htm (describing the securitization process). Assuming that this is true, mortgage-backed securities are perfectly legal, and the securitization process is common within the financial industry.  *See id.*; 17 C.F.R. Part § 229.1100, *et seq.* (regulating asset-backed securities, including mortgages).  Moreover, Plaintiff's Deed of Trust makes clear that CitiMortgage is free to sell his note and/or deed of trust at any time, without his consent.  (Exhibit B at 11.)  Accordingly, this claim is without merit.

F.     **State Law Fraud Claims**

Plaintiff makes various vague fraud allegations, alleging that Defendants purportedly committed (1) "fraud in the inducement" by using "deceit and trickery" to force Plaintiff to enter the loan, (Compl. at 7); and (2) "material misrepresentation," by "deliberately hid[ing] and falsif[ying] material facts about the true nature of the loan agreements," which "deprive[ed Plaintiff] the opportunity to abort the contract sooner than later."  (*Id.*)

To plead a claim for fraudulent misrepresentation or fraudulent inducement[10] under Missouri law, a plaintiff must allege eight elements:

> (1) the representation is false; (2) the representation is material; (3) the speaker knows of the representation's falsity; (4) the speaker intends the hearer to act on the representation "in the manner

---

[10] "Fraud in the inducement is a subset of fraudulent misrepresentation, applicable where a fraudulent misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved."  *Lion Petroleum of Missouri, Inc. v. Millennium Super Stop, LLC*, No. 4:06CV0698, 2008 WL 3010789, at *5 (E.D. Mo. Aug. 1, 2008) (citing *Utica Mut. Ins. Co. v. BancInsure, Inc.*, No. 06CV0664 ERW, 2007 WL 2860237, at * 18 n. 9 (E.D. Mo. Sept. 25, 2007); *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 763 (Mo. banc 2007); *Bracht v. Grushewsky*, 448 F. Supp. 2d 1103, 1110 (E.D. Mo. 2006)).

13

> reasonably contemplated"; (5) the hearer is ignorant of the
> representation's falsity; (6) the hearer relies on the representation's
> truth; (7) the hearer has a right to rely on the representation; and
> (8) the hearer is consequently and proximately injured.

*Cordry v. Vanderbilt Mortgage & Fin., Inc.*,  445 F.3d 1106, 1111-12 (8th Cir. 2006) (citing *Joel*

*Bianco Kawasaki Plus, Inc. v. Meramec Valley Bank,* 81 S.W.3d 528, 536 (Mo. banc 2002)).

In addition, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This

"particularity requirement demands a higher degree of notice than that required for other claims."

*United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).  Under this

standard, "[t]he claim must identify who, what, where, when, and how."  *Id.*  "[T]he particularity

required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to

the potentially damaging allegations."  *Id.*

Here, Plaintiff alleges no facts whatsoever relating to the "who, what, where, when, and

how" of CitiMortgage's purported fraud, as required by Rule 9.  The Complaint fails to name

any person who allegedly made misrepresentations to Plaintiff, describe the "material facts" that

were allegedly withheld from Plaintiff, state that Plaintiff relied on any such misrepresentations

in entering the loan, or explain how Plaintiff was injured by the alleged misrepresentations.

Plaintiff's repeated use of the word "fraud," without more, does not state a claim for fraud or

satisfy Rule 9's heightened pleading requirements.  It is thus impossible, given the sparse

allegations in the Complaint, for CitiMortgage to respond to Plaintiff's fraud allegations.  These

claims must therefore be dismissed.

Count 2 of the Complaint, labeled "fraud in fact" alleges that "Citimortgage concealed

the fact that they were going to convert me to a surety on an investment contract."  (*Id.*)  It

appears that this is actually a claim for "fraud in the factum," based on Plaintiff's citation to Mo.

Rev. Stat. § 400.3.305 and statement in Exhibit 1 that Defendants engaged in "[f]raud in the factum, rendering the transaction illegal."  (Exh. 1 at 9.)  The statute provides that an obligor has a defense to a claim for payment on an instrument if there existed "fraud that induced the obligor to sign the instrument with neither knowledge *nor reasonable opportunity* to learn of its character or essential terms.  Mo. Rev. Stat. § 400.003.305(a)(1)(iii) (emphasis added).  The comments to the U.C.C. aptly explain the typical claim:

> The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document.  The theory of the defense is that the signature on the instrument is ineffective because the signer did not intend to sign such an instrument at all.  Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms.  The test of the defense is that of *excusable ignorance* of the contents of the writing signed.

U.C.C. § 3-305 cmt. 1 (emphasis added).  As set forth in Section III, *supra*, Plaintiff's contention that he "had no idea this transaction was being processed as a loan" is implausible.  As demonstrated by the Note and Deed of Trust (Exhibits A and B), the fact that this transaction was a loan, secured by Plaintiff's residence, was evident from the face of the documents.  If Plaintiff failed to read these instruments, this is not "excusable ignorance" contemplated by the statute. *See FDIC v. Virginia Crossings P'ship*, 909 F.2d 306, 311 (8th Cir. 1990).

## Conclusion

For the foregoing reasons, Plaintiff has failed to state any cognizable claim for relief, and the Complaint should be dismissed in its entirety.

Dated: May 3, 2010

Respectfully submitted,

BRYAN CAVE LLP

By: /s/ Louis F. Bonacorsi
Louis F. Bonacorsi, # 2668
Angela L. Harris, # 5216523
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
(314) 259-2020 (facsimile)

Attorneys for Defendants CitiMortgage,
Inc., Sanjiv Das, and Paul Ince

## <u>CERTIFICATE OF SERVICE</u>

   The undersigned hereby certifies that a true and correct copy of the foregoing was served by U.S. Mail, postage prepaid, on May 3, 2010, to:

Alfred D. Harvey, Jr.
13345 Buckland Hall Road
St. Louis, MO 63131


        /s/  Louis F. Bonacorsi